879 F.2d 425
 Harry WELTMAN, Appellant,
v.
Ozzie SILNA, Daniel Silna, Donald Schupak, Spirits of St.
Louis Basketball Club, L.P., and Pak Fabrics,
Inc., d/b/a Pak Fabric Sale Co., Appellees.
 No. 88-2500.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 13, 1989.
Decided July 19, 1989.
 
 Leo V. Garvin, Jr., St. Louis, Mo., for appellant.
 Thoams M. Newmark, St. Louis, Mo., for appellees.
 Before ARNOLD Circuit Judge, BRIGHT, Senior Circuit Judge and MAGILL, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 Appellant Harry Weltman appeals from a judgment entered after a bench trial rejecting his claim to a limited partner's share of the proceeds received by a former American Basketball Association (ABA) team pursuant to a 1976 merger agreement between the ABA and the National Basketball Association (NBA). We reverse and remand to the district court for further proceedings consistent with this opinion.
 
 I. BACKGROUND
 
 2
 In 1973, appellee attorney Donald Schupak asked Weltman to locate a sports franchise for Schupak and two of his clients, appellees Ozzie and Daniel Silna, to purchase. Weltman found an available American Basketball Association franchise, which the group purchased and moved to St. Louis, renaming the club the Spirits of St. Louis. In 1974, the investors purchased the franchise through a limited partnership, appellee Spirits of St. Louis Basketball Club, L.P. (Spirits), formed under Delaware law. Pak Fabrics, Inc., a New Jersey corporation, acted as the general partner. Schupak, Weltman, the Silnas and Eric Rosenfeld comprised the limited partners. Weltman received a five percent interest in the partnership and served as president of the general partner corporation. Weltman managed the club's business operations in St. Louis while the other partners remained absentee owners.
 
 
 3
 In an attempt to raise further capital for the financially troubled club, the group filed an amendment to the partnership agreement with the Delaware Secretary of State on April 15, 1975. This amendment named several new limited partners, but did not list Weltman as a limited partner. Weltman signed the amendment in December of 1974 in his capacities as president of Pak Fabrics and attorney-in-fact for the limited partners.[1]
 
 
 4
 As part of the settlement of a lawsuit between the ABA and the rival NBA, the Spirits ceased operations in July 1976. Under the settlement, the team sold its player contracts to new NBA expansion clubs in exchange for present and deferred cash payments and for a share of future television revenue in perpetuity. The payments for the 1987-1988 basketball season amounted to approximately $1,350,000. Weltman, who never received payments under the settlement, filed this suit to recover his limited partner's share of the proceeds.
 
 
 5
 The district court applied Del.Code Ann. tit. 6, Secs. 17-1101 through 17-1108 (Supp.1986), the amended Delaware partnership law, and held that Weltman withdrew from the partnership by signing, in his capacity as president of the general partner corporation, a 1975 amendment to the partnership agreement that added new partners but deleted Weltman's name.
 
 
 6
 Weltman appeals.
 
 II. DISCUSSION
 A. Jurisdiction
 1. Diversity of Citizenship
 
 7
 Weltman brought this suit in the Circuit Court for the City of St. Louis alleging that his status as a limited partner in the Spirits of St. Louis Basketball Club entitled him to a share of the payments due under the settlement with the NBA. The appellees removed the action to the United States District Court for the Eastern District of Missouri, based on diversity of citizenship. At the time he commenced this suit, Weltman was a citizen of Ohio. Ozzie and Daniel Silna were citizens of New Jersey and Schupak was a citizen of Nevada. The Spirits of St. Louis Basketball Club was a Delaware limited partnership, and Pak Fabrics was an inactive New Jersey corporation with no principal place of business.
 
 
 8
 In determining diversity of citizenship, the citizenship of each limited partner must be considered. The Stouffer Corp. v. Breckenridge, 859 F.2d 75, 76 (8th Cir.1988). Weltman contends that as a limited partner of the Spirits, his citizenship, too, must be considered in determining diversity. In essence, he is urging the court to treat him as both a plaintiff and a defendant for purposes of determining diversity. We decline to do so.
 
 
 9
 In Gore v. Stenson, 616 F.Supp. 895 (D.C.Tex.1984), the sole limited partner of a limited partnership brought suit against the limited partnership and its general partner in state court. The defendants removed the suit to federal court, basing jurisdiction on diversity of citizenship. The limited partner claimed that diversity was lacking because her citizenship as a limited partner must be considered in determining the citizenship of the limited partnership. The district court noted, id. at 900, that "plaintiff cannot assert her own Texas citizenship as the sole limited partner, thereby aligning herself as a defendant and destroying diversity. In this light, her claim becomes one against the sole general partner, whose domicile is Georgia."
 
 
 10
 We agree with the Texas court's analysis. The ultimate issue in the case is whether Weltman, who is not listed as a limited partner on the amended agreement, is in fact a limited partner. Essentially, Weltman is suing the general partner and the other limited partners claiming that he too is a limited partner and entitled to a share of the settlement proceeds. In this light, diversity plainly exists.
 
 2. Waiver of Right to Remove
 
 11
 Weltman also argues that the appellees waived their right to remove the suit to federal court when they consented to subject matter jurisdiction and venue in the state court in the City of St. Louis. The agreement in which the appellees consented to Weltman's filing this suit in state court did not address removal. Waiver of the right to remove must be "clear and unequivocal," 1A J. Moore, B. Ringle & J. Wicker, Moore's Federal Practice p 0.157 (2d ed. 1987), and thus the district court properly rejected Weltman's claims that the appellees waived their right to remove.
 
 B. Merits
 1. Applicable Law
 
 12
 The district court applied Delaware partnership law, as amended in 1982, in ruling on Weltman's claim. The amended statute carries an effective date of January 1, 1983, and its provisions are made applicable to partnerships formed after July 1973. Del.Code Ann. tit. 6, Sec. 17-1104 (Supp.1988). The investors formed the Spirits of St. Louis on October 14, 1974, and filed the amendment purporting to remove Weltman as a limited partner in April 1975. The district court reasoned that the amended statute applied to the facts of this case because this partnership had been formed in 1974 and it interpreted Sec. 17-1104 to require the amended statute to apply to limited partnerships formed after July 1973.
 
 
 13
 We disagree.
 
 
 14
 Under the amended statute, only the general partner's signature is necessary to execute an amendment to the partnership agreement. Del.Code Ann. tit. 6, Sec. 17-204 (Supp.1988). The earlier statutory scheme, in effect in 1974 and 1975 when the Spirits formed the partnership and attempted to amend the partnership agreement, required that a
 
 
 15
 writing to amend a certificate [of partnership] shall be signed and sworn by all members, and an amendment substituting a limited partner or adding a limited partner or a general partner shall be signed also by the member to be substituted or added, and when a limited partner is to be substituted, the amendment shall also be signed by the assigning limited partner.
 
 
 16
 Del.Code Ann. tit. 6, Sec. 1725 (repealed 1982). Under the amended statute, Weltman's signature as president of the sole general partner, Pak Fabrics, Inc., served to effectuate the amendment deleting Weltman's name as a limited partner. However, under the prior law, the attempted amendment could have been ineffective because the general partner's signature alone is insufficient to execute an amendment. The district court's application of the amended partnership statute to the facts of this case thus essentially validates actions which when taken in 1974 and 1975 might be insufficient to amend the partnership agreement. The district court made no findings and reached no conclusion concerning the validity of the amendment under the earlier version of the partnership law of Delaware.
 
 
 17
 The statutory language, and the approach more consistent with promoting a policy of certainty in business relationships, is to read Sec. 17-1104 of the amended statute to apply only to acts performed after January 1, 1985, by limited partnerships formed after 1973.
 
 
 18
 Subsection (b) of Sec. 17-1104 provides, with certain exceptions not here applicable, that
 
 
 19
 all limited partnerships formed on or after July 1, 1973, and prior to the effective date, under Chapter 17 of this title as hereby repealed, shall continue to be governed by that chapter until January 1, 1985, the "extended effective date", at which time such limited partnerships shall be governed by this chapter.
 
 
 20
 As we read this provision, a limited partnership formed after 1973, and those formed at least up to January 1, 1983, are governed by the provisions of the repealed statute until January 1, 1985, but thereafter by the new statute. Thus, we reject appellees' contention in this case that a statute not in existence when the parties acted governs the legality of that action by reason of the bringing of a lawsuit after the passage of the effective date of the statute in question.
 
 
 21
 Such approach also conforms with the general rule that amendment of a statute does not affect prior operation of the statute or any action taken thereunder. Uniform Law Commissioners' Model Statutory Construction Act, Sec. 25(a)(1), 14 U.L.A. 532 (1980). See also 73 Am.Jur.2d Statutes Sec. 350 (1974) (amendment to statute operates prospectively where retroactive application would destroy a vested right); 4 N. Singer, Statutes & Statutory Construction, Secs. 41.01-41.06 (4th ed. 1986); B. v. B., 396 A.2d 169, 171 (Del.Super.Ct.1978) (stating the general rule that the law does not favor giving retroactive effect to statutes especially where vested rights are concerned). This approach allows the parties to a business transaction to act without the worry that their actions may, at some later date, have a different significance under the law.
 
 2. Withdrawal from the Partnership
 
 22
 The parties dispute whether the partnership documents comply with the earlier version of the Delaware partnership law, previously cited. This issue will be addressed on remand, and, if necessary, the district court will address other issues relating to the efficacy of Weltman's withdrawal from the partnership, and his contention that any purported withdrawal from the partnership or relinquishment of partnership rights should be invalidated for lack of consideration or other reasons.[2]
 
 III. CONCLUSION
 
 23
 Accordingly, we reverse and vacate the judgment of dismissal and remand the case to the district court for a redetermination of Weltman's withdrawal from the partnership, and, if appropriate, a determination of the full merits of the case. The district court, at its discretion, may permit the parties to present additional evidence in this case.
 
 
 
 [1]
 Appellant asserts that Weltman possessed no written powers of attorney from the limited partners
 
 
 [2]
 That issue is also for the district court on remand and it will make such findings as it deems proper for disposition of this case