## The STOUFFER CORPORATION, Appellee,

v.

## Donald E. BRECKENRIDGE, Appellant.

### No. 87–2636EM.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1988.

Decided Oct. 11, 1988.

James D. Bass, Clayton, Mo., for appellant.

Paul J. Puricelli, St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, ROSS, Senior Circuit Judge, and WOLLE *, District Judge.

WOLLE, District Judge.

This interlocutory appeal presents the question whether the state of citizenship of a limited partner must be considered in determining whether diversity jurisdiction is satisfied. The plaintiff, an Ohio corporation, brings this action as the general partner on behalf of a limited partnership which includes as limited partners several Missouri citizens. The defendant is a citizen of Missouri. The District Court,[1] faced with conflicting decisions from other cir-

---

4. We find that the other issues raised by Booth are without merit.

* The Hon. Charles R. Wolle, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Hon. Clyde S. Cahill, United States District Court for the Eastern District of Missouri.

cuits and no controlling decision of the United States Supreme Court, denied defendant's motion to dismiss but gave defendant permission to request interlocutory appeal. Having granted that request, we conclude the citizenship of limited partners must be considered in determining diversity jurisdiction. We therefore remand the case to the district court with directions to dismiss for lack of jurisdiction.

■ It is well established that diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all of those on the other. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); 28 U.S.C. § 1332(a)(1), (c). A corporate litigant has long been conclusively presumed to be a resident of its state of incorporation. *See Marshall v. Baltimore & O.R.R.,* 57 U.S. (16 How.) 314, 325–29, 14 L.Ed. 953 (1854) (codified at 28 U.S.C. § 1332(c) (1970)). An unincorporated association, however, has traditionally been viewed as a citizen of the state of each of its constituent members. *Chapman v. Barney,* 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889) (federal jurisdiction could be invoked only if all members of unincorporated New York joint stock company were of citizenship diverse from that of all opposing parties); *Great S. Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900) (court refused to extend jurisdiction by way of corporate analogy to Pennsylvania limited partnership association). That traditional, narrow view of federal jurisdiction over unincorporated associations was challenged but reaffirmed in *United Steelworkers v. R.H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). The court held that an unincorporated labor union's citizenship for jurisdictional purposes must take into account the citizenship of each of its members and not just the location of its principal office.

The United States Supreme Court has not yet addressed the issue here presented, and this court has noted but not decided it. *See Missouri–Indiana Inv. Group v. Shaw,* 699 F.2d 952, 957 n. 6 (8th Cir.1983). Appellate decisions in three circuits man-

date consideration of the citizenship of limited partners. *See New York State Teachers Retirement Sys. v. Kalkus,* 764 F.2d 1015 (4th Cir.1985); *Elston Inv., Ltd. v. David Altman Leasing Corp.,* 731 F.2d 436 (7th Cir.1984); *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n,* 657 F.2d 29 (3d Cir.1981); *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d 1254 (3d Cir.1977). Two circuits have adopted a less restrictive approach, deciding on a case-by-case basis whether the limited partner is a real party to the controversy. *See Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 240 (5th Cir.1986); *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

In the only published opinion on the issue from this circuit, the district court referred to the cases from the several circuits, then concluded:

> [T]he better reasoned rule is that citizenship of limited partners must be considered in determining diversity of citizenship.

*Castlewood Dev. Co. v. Real Estate Assocs. Ltd. II,* 652 F.Supp. 1582, 1583 (S.D. Iowa 1987). We too conclude the better rule requires complete diversity between the plaintiff and all partners of the defendant corporation, limited as well as general partners. We must therefore reverse the district court's refusal to dismiss the complaint for want of diversity jurisdiction.

The reasons for the rule we here adopt are well explained in the above-cited decisions from the Third, Fourth and Seventh Circuits. A limited partnership is one form of unincorporated association, and the court has long required consideration of the citizenship of all members of such associations. Therefore, this rule is "more consonant with Supreme Court precedent." *Elston Inv., Ltd. v. David Altman Leasing Corp.,* 731 F.2d at 438. No one suggests that Congress has ever intended diversity jurisdiction to extend to partnerships whose limited partners include citizens of the same state as an opposing party. *Carlsberg Resources Corp. v.*

*Cambria Sav. & Loan Ass'n,* 554 F.2d at 1262. Any change should come from Congress. *New York State Teachers Retirement Sys. v. Kalkus,* 764 F.2d at 1019; *Elston,* at 439.[2]

Practical considerations also favor this rule that treats all limited partnerships alike for jurisdictional purposes. This bright-line rule will enable the parties and counsel contemplating litigation involving a limited partnership to determine readily whether a limited partner's citizenship will preclude diversity jurisdiction. The contrary rule of the Second and Fifth Circuits, requiring a case-by-case determination whether limited partners are real parties to the controversy, would often mandate an evidentiary hearing on the threshold issue of jurisdiction. Our rule thus enhances predictability of result and promotes judicial economy.

Finally, we reject the plaintiff's contention that the Court in *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), changed direction and now requires a detailed determination whether nondiverse citizens are real parties to the controversy in all cases involving unincorporated associations. The court explicitly stated that the case involved "an express trust" and "neither an association nor a corporation." *Id.,* at 462, 100 S.Ct. at 1782. The dissenting justice underlined that disclaimer from the majority opinion. *Id.* at 475 n. 6, 100 S.Ct. at 1789 n. 6; *see Trent Realty Assocs.,* 657 F.2d at 32.

With diversity of citizenship absent and no other basis for federal jurisdiction, the district court should have granted defendant's motion to dismiss. We remand the case to the district court with directions to dismiss for lack of jurisdiction.

REMANDED WITH DIRECTIONS.

ROSS, Senior Circuit Judge, dissenting.

I respectfully dissent. The majority's position disregards the "real parties to the controversy" test recognized long ago[1], and more recently restated in *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). That test clearly provides that "a federal court must disregard nominal or formal parties and rest [diversity] jurisdiction only upon the citizenship of real parties to the controversy. *E.g., McNutt v. Bland,* [43 U.S. (2 How.) 1, 7 (1844)]; see 6 C. Wright & A. Miller, Federal Practice and Procedure § 1556, pp. 710–711 (1971)." *Navarro, supra,* 446 U.S. at 461, 100 S.Ct. at 1782.

In *Navarro,* the Supreme Court applied the "real parties to the controversy" test to determine whether, in a business trust situation, the citizenship of the trust beneficiaries must be considered as well as that of the trustees. In that case, the Court concluded that the trustees were the real parties to the controversy. *Id.* at 465–66, 100 S.Ct. at 1784–85. The Court rested its conclusion upon findings that under the trust agreement (a) the trustees were authorized to have legal title to the trust assets, to manage and invest the assets for the benefit of the beneficiaries, and to sue and be sued in their capacity as trustees, and (b) the trust beneficiaries had no power to make investment decisions, to intervene in the affairs of the trust (except in the most extraordinary situations), or to control the litigation. *Id.* at 464–65 & n. 14, 100 S.Ct. at 1783–84 n. 14. As "real parties to the controversy," the trustees were entitled to invoke the diversity jurisdiction of the federal court without regard to the citizenship of the trust beneficiaries. *Id.* at 465–66, 100 S.Ct. at 1784–85.

The clear message of *Navarro* is that federal courts are required to look beyond

---

**2.** The United States Supreme Court in *Bouligny* conceded the force of arguments proffered by a labor union for extending diversity jurisdiction, but its clear-cut response was "that these arguments, however appealing, are addressed to an inappropriate forum, and that pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be

made to the Congress and not to the courts." 382 U.S. at 150–51, 86 S.Ct. at 274–75.

**1.** *See Coal Co. v. Blatchford,* 78 U.S. (11 Wall.) 172, 177, 20 L.Ed. 179 (1871); *Marshall v. Baltimore & Ohio R. Co.,* 57 U.S. (16 How.) 334, 349–51, 14 L.Ed. 953 (1854); and *McNutt v. Bland,* 43 U.S. (2 How.) 1, 7–8 (1844).

the superficial contours of a business entity to determine the real parties to the controversy. "[A] federal court must disregard nominal or formal parties * * *." *Navarro, supra,* 446 U.S. at 461, 100 S.Ct. at 1782. *Navarro* also illustrates that the "real parties to the controversy" typically are those who possess the power to own and control the business assets and to control the business' litigation. *Id.* at 465, 100 S.Ct. at 1784.

Applying the "real party to the controversy" test, both the Second and Fifth Circuits have held that diversity jurisdiction is not defeated by the citizenship of limited partners where the general partners have the exclusive power to manage the business assets and to control all litigation. *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 240 (5th Cir.1986) (exclusive power pursuant to partnership agreement); *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178, 183–84 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (exclusive power to litigate pursuant to state partnership law). Similarly, in the present case diversity jurisdiction should not be defeated by the citizenship of Stouffer's limited partners because (1) presently under Missouri law the limited partners are not proper parties to this action, *see* Mo.Ann.Stat. § 359.260 (Vernon 1968)[2], and more importantly (2) Stouffer, as the general partner of Concourse Airport Hotel Partnership, "has the exclusive power to contract, conduct all business transactions, and is in control of all litigation" for the partnership. *Stouffer Corp. v. Breckenridge,* No. 86–629–C(4), slip op. 5 (E.D.Mo. June 16, 1987). By definition, Stouffer is the real party to the controversy, not the limited partners.

The majority instead chooses to follow the "bright-line" position adopted by the Third, Fourth and Seventh Circuits, which classifies limited partnerships as unincorporated associations and requires consideration of the citizenship of all members for diversity purposes. Such an approach fails to recognize the unique character of most limited partnerships—neither corporation nor association, but a hybrid between the two. *See Mesa Operating Ltd. Partnership, supra,* 797 F.2d at 240. Because there is a significant split among the circuit courts, this issue should at some point be resolved by the United States Supreme Court.

For the reasons set forth above, I would affirm the district court's refusal to dismiss the complaint for want of diversity jurisdiction.

---

2. Mo.Ann.Stat. § 359.260 (Vernon 1968), which provides that a limited partner is not a proper party to a proceeding, has been repealed effective January 1, 1989, pursuant to revisions of the state's Uniform Limited Partnership Law.

*See* Mo.Ann.Stat. §§ 359.010–.691 (Vernon Supp.1988). Notwithstanding the statute's impending repeal, this section is presently effective and relevant to the issue of determining the real parties to the present controversy.