**SHR LIMITED PARTNERSHIP, a West Virginia Limited Partnership; Joburg Limited Partnership, a West Virginia Limited Partnership, Plaintiffs–Appellees,**

v.

**Ella H. BRAUN; Ernest S. Cornwell, Jr.; Charles A. Coryell, Jr.; Melvin K. Nielson; Dale M. Nielson, individually and as Trustees or Agents of the Salling Hanson Company Trust, and Johannesburg Manufacturing Company Trust, both Michigan Trusts, Defendants–Appellants.**

No. 88–2281.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1989.

Decided Oct. 30, 1989.

William K. Holmes (argued), Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiffs-appellees.

Edward R. Post (argued), Miller, Johnson, Snell & Cummiskey, Grand Haven, Mich., for defendants-appellants.

Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiffs–Appellees are two West Virginia limited partnerships formed by some of the beneficiaries of two liquidating trusts. Defendants–Appellants are the trustees and are Michigan domiciliaries. Although all of appellees' general partners are non-Michigan residents, many of appellees' lim-

---

ited partners are Michigan residents. The limited partnerships filed this action seeking an accounting, removal of the trustees and damages for trust mismanagement. This action was filed in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1332, diversity jurisdiction. The trustees, arguing that the citizenship of the limited partners must be taken into consideration when determining diversity jurisdiction, moved to dismiss this action for lack of complete diversity. The district court denied appellants' motion. Appellants sought the district court's certification of the issue for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The district court, noting that the issue concerned a controlling issue of law upon which there is substantial ground for differences of opinion, granted appellants' motion and certified the issue for an interlocutory appeal. This court granted appellants' petition for leave to appeal the order denying their motion to dismiss for lack of diversity jurisdiction.[1]

## I.

The Salling Hanson Company Trust and the Johannesburg Manufacturing Company Trust were formed in the 1930's to liquidate and distribute the assets of two timber companies. The proceeds from the liquidations were to be distributed to the trusts' beneficiaries. The trustees, appellants, claim that "substantially all" of the assets were distributed, whereas the appellees maintain that, despite the trusts' express dissolution purpose, the assets have yet to be distributed. The Internal Revenue Service, alleging that the trustees were not operating the entities as liquidating trusts, brought an action against the trusts. This action resulted in a substantial tax penalty and an agreement by the trustees to distribute all trust assets. Nevertheless, the appellees argue that the appellants refused to distribute the trust assets unless the beneficiaries waived all potential claims for damages. The beneficiaries refused whereupon the appellants filed an action in the Ostego County, Michigan, state court seeking approval of their activities in a declaratory judgment action. That action was later dismissed without prejudice.

Shortly thereafter appellees filed this action in the Federal District Court for the Western District of Michigan alleging mismanagement of the trusts. Diversity jurisdiction was claimed pursuant to 28 U.S.C. § 1332. The appellants are domiciliaries of Michigan. The appellees' general partners are all non-Michigan residents. Some of the appellees' limited partners, however, are Michigan residents. The appellants, claiming that diversity has been destroyed by the limited partners residing in Michigan, argue that the district court lacks diversity jurisdiction. The district court denied appellants' motion to dismiss. The district court certified the issue of diversity jurisdiction for interlocutory appeal to this court. This court granted appellants' petition for leave to appeal the order denying their motion to dismiss for lack of diversity.

## II.

Diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation. 28 U.S.C. § 1332(a), (c). Appellants argue that the district court erred by ruling that the citizenship of the limited partners of a limited partnership may be disregarded when determining whether diversity jurisdiction exists.

Neither the Supreme Court nor the Sixth Circuit has directly decided whether the citizenship of limited partners should be considered when determining whether diversity jurisdiction exists. A split of authority exists among the circuits that have considered this issue.

The first line of decisions follows the "real parties to the controversy" test recently restated by the Supreme Court in *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). This test provides that "a federal court must

---

**1.** *Braun v. SHR Ltd. Partnership,* 865 F.2d 256    (6th Cir.1988) (Table).

disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* at 461, 100 S.Ct. at 1782.

In *Navarro*, the Supreme Court applied the "real parties to the controversy" test to determine whether, in a business trust organized under Massachusetts law, the citizenship of the trust beneficiaries must be considered as well as the citizenship of the trustees. The Court concluded that the trustees were the "real parties to the controversy." *Id.* at 465–66, 100 S.Ct. at 1784. As the "real parties to the controversy," the trustees were entitled to invoke the diversity jurisdiction of the federal court without regard to the citizenship of the trust beneficiaries. *Id.*

Applying the "real party to the controversy" test, both the Second and Fifth Circuits have held that diversity jurisdiction is not defeated by the citizenship of limited partners if the general partners exclusively possess the authority to manage the business assets and control all litigation. *See Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238 (5th Cir.1986) (followed *Navarro* after holding that a limited partnership, like a business trust, is neither a corporation nor an association, but is instead a hybrid); *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (followed *Navarro* after holding that a strict interpretation of the New York limited partnership statute regards a limited partner as an improper party to proceedings by, or against, the limited partnership). Supporters of this view argue that the Uniform Limited Partnership Act bars limited partners from taking part in actions by, or against, the partnership except in limited circumstances. The supporters, therefore, maintain that only the general partners may be deemed the "real parties to the controversy."

Conversely, the second line of decisions maintains that the residence of all partners, including limited partners, must be considered for diversity jurisdiction purposes. Decisions rendered by the Third, Fourth, Seventh, Eighth and Eleventh Circuits support this view.

In *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889), the Supreme Court held that federal jurisdiction could be exercised only if all members of an unincorporated New York joint stock company were of diverse citizenship from all opposing parties. *Id.* at 681–82, 9 S.Ct. at 427. Over ten years later the Supreme Court refused to extend jurisdiction by way of corporate analogy [2] to a Pennsylvania limited partnership association. *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900). The Supreme Court held: "When the question relates to the jurisdiction of a Circuit Court of the United States as resting on the diverse citizenship of the parties we must look in the case of a suit by or against a partnership association to the citizenship of the several persons composing such association." *Id.* at 456, 20 S.Ct. at 693.

This narrow view of federal diversity jurisdiction over unincorporated associations was challenged, but reaffirmed by the Supreme Court in *United Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). The Court in *Bouligny* held that an unincorporated labor union's citizenship for jurisdictional purposes must take into account the citizenship of each of its members and not merely the location of its principal office:

> [Courts and commentators] assert with considerable merit, that it is not good judicial administration, nor is it fair, to remit a labor union or other unincorporated association to vagaries of jurisdiction determined by the citizenship of its members and to disregard the fact that unions and associations may exist and have an identity and a local habitation of their own.
>
> ... Extending diversity jurisdiction to unions, says petitioner, would make available the advantages of federal procedure, Article III judges less exposed to

---

**2.** A corporate litigant is conclusively presumed to be a resident of its state of incorporation and of the state where it has its principal place of business. 28 U.S.C. § 1332(c).

local pressures than their state court counterparts, juries selected from wider geographical areas, review in appellate courts reflecting a multi-state perspective, and more effective review by this Court.

We are of the view that these arguments, however appealing, are addressed to an inappropriate forum, and that pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts.

*Id.* at 150–51, 86 S.Ct. at 274–75.

The Eighth Circuit, holding that "[a] limited partnership is one form of unincorporated association, and the Court has long required consideration of the citizenship of all members of such associations," *Stouffer Corp. v. Breckenridge,* 859 F.2d 75, 76 (8th Cir.1988), rejected plaintiff's contention that *Navarro* now requires a detailed determination whether nondiverse citizens are real parties to the controversy in all cases involving unincorporated associations. *Id.* at 77.

The court added that "practical considerations also favor this rule that treats all limited partnerships alike for jurisdictional purposes," concluding that this "bright-line" rule enables parties and counsel contemplating litigation involving a limited partnership to determine readily whether a limited partner's citizenship will preclude diversity jurisdiction. *Id.* Judicial economy is thereby promoted. The Eighth Circuit recently reaffirmed its position in *Weltman v. Silna,* 879 F.2d 425 (8th Cir. 1989), again holding that the citizenship of each limited partner must be considered when determining diversity jurisdiction.

The Third Circuit similarly rejected the argument that only the citizenship of the general partners be considered when determining whether complete diversity exists. The court therefore held that a nondiverse limited partner destroyed diversity jurisdiction. *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d 1254 (3d Cir.1977). Relying on *Chapman* and *Bouligny,* the Third Circuit added that the Supreme Court continues to adhere to the rule that unincorporated associations are citizens of each of their members' states for diversity jurisdictional purposes.

The Third Circuit concluded that the Supreme Court had taken "a rather hard line, demanding that existing principles respecting diversity jurisdiction be strictly followed." *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d at 1259. Criticizing the Second Circuit's reasoning, and holding, in *Colonial Realty,* the Third Circuit held that reliance on state law capacity to sue rules improperly empowered state legislatures and state courts to determine the parameters of federal jurisdiction. The court added that such an interpretation of the diversity rules would violate Fed.R.Civ.P. 82, prohibiting the use of the Federal Rules of Civil Procedure to extend federal jurisdiction:

> To import state law concepts of capacity to sue into evaluations of jurisdiction ... would appear to have a definite effect on jurisdiction. Specifically, to ignore an identity of citizenship between limited partners and litigants with opposing interests, because of reliance on state statutes concerning the capacity to sue, does operate to liberalize access to the federal courts under diversity jurisdiction. It would seem to follow that Rule 82 bars the utilization of [New York] Rule 17 in this context.

*Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d at 1261.

The Seventh Circuit relied on the Supreme Court's holding in *Chapman* to reject the argument that limited partners are not "real parties to controversies," and relied on the Court's holding in *Bouligny* to reject the limited partners' assertion that the citizenship of limited partners is irrelevant because they neither manage partnership assets nor control partnership litigation. *Elston Inv., Ltd. v. David Altman Leasing Corp.,* 731 F.2d 436, 438–39 (7th Cir.1984).

Compelled by the reasoning set forth by the Third Circuit in *Carlsberg Resources* and the Seventh Circuit in *Elston Inv.,* the Fourth Circuit similarly held that, for purposes of diversity jurisdiction, the citizen-

ship of a limited partnership is determined by considering the citizenship of all of its partners, both general and limited. *New York State Teachers Retirement Sys. v. Kalkus*, 764 F.2d 1015, 1018–19 (4th Cir. 1985). Similarly, the Eleventh Circuit, citing *Elston Inv.*, recently held that "[t]he allegation of citizenship of the limited partners is critical in a diversity case because partnerships are deemed citizens of all states in which the limited partners are citizens." *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 916 n. 9 (11th Cir.1989).

After careful analysis in the instant action, this court holds that the residence of limited partners be considered for diversity jurisdiction purposes. The Sixth Circuit joins the Third, Fourth, Seventh, Eighth and Eleventh Circuits in so holding. The Second and Fifth Circuits, applying the "real party to the controversy" test, maintain that limited partners not be considered for diversity purposes.

Although this decision runs contrary to at least two Sixth Circuit district court decisions,[3] and requires reversal of the district court's order in the instant action, we find this "bright-line" view to be the better reasoned position.

Though the attributes of a limited partner resemble those of a corporate shareholder, a limited partnership is, nevertheless, an unincorporated association and the Supreme Court has consistently required consideration of the citizenship of all members of such associations when determining diversity jurisdiction. This holding is, therefore, truer to Supreme Court precedent.

Practical considerations also favor this rule. This "bright-line" rule promotes judicial economy by enabling the parties to determine whether a limited partner's citizenship will preclude diversity jurisdiction without the necessity of an evidentiary hearing on the threshold issue of jurisdiction.

3. *Williams v. Sheraton Inns, Inc.*, 514 F.Supp. 22 (E.D.Tenn.1980); *Winn v. Seidman Fin. Serv.*,

Finally, we do not join the appellees in their belief that *Navarro Sav. Ass'n v. Lee* controls the resolution of this issue. In *Navarro*, the Supreme Court explicitly stated that the case involved "an express trust" and "neither an association nor a corporation." *Navarro Sav. Ass'n*, 446 U.S. at 462, 100 S.Ct. at 1782. Even the Fifth Circuit acknowledged that *Navarro* applied only by analogy: "We acknowledge that *Navarro* was expressly limited to trusts. But we see no reason not to apply its reasoning to a situation it equally fits." *Mesa Operating Ltd. Partnership*, 797 F.2d at 242.

For the foregoing reasons, the district court's order denying appellants' motion to dismiss is REVERSED.

726 F.Supp. 169 (W.D.Mich.1989).