NORTHEAST CONSTRUCTION SERVICES, INC. and New Michigan Limited Partnership, Plaintiffs,

v.

TWIN LAKE CONSTRUCTION CO., Defendant.

No. 1:97–CV–331.

United States District Court, W.D. Michigan, Southern Division.

Sept. 19, 1997.

---

Edward A. Grafton, McNeil Grafton Law Offices, Grand Haven, MI, for Plaintiffs.

Thomas H. Thornhill, Warner, Norcross & Judd, LLP, Muskegon, MI, for Defendant.

## OPINION

QUIST, District Judge.

The First Amended Complaint ("complaint") in this case alleges that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Paragraph 4 of the complaint alleges that a plaintiff, New Michigan Limited Partnership ("NMLP"), is a Massachusetts limited partnership, with its principal place of business in the State of Massachusetts. Paragraph 5 of the complaint alleges that defendant, Twin Lake Construction Co. ("Defendant"), is a Michigan corporation with its principal place of business in the State of Michigan.

On May 29, 1997, this Court pointed out that the limited partnership, NMLP, is not, itself, a citizen for diversity purposes, and its place of association and principal place of business are irrelevant for diversity purposes. See Carden v. Arkoma Assocs., 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). This Court pointed out that it must look to the citizenship of each of the limited partnership's general and limited partners in order to determine whether there is complete diversity among the parties. See Certain Interested Underwriters at Lloyd's, London, England v. Layne, 26 F.3d 39, 41 (6th Cir. 1994). The plaintiffs were ordered to allege and establish complete diversity of citizen-

ship within fourteen (14) days of the May 29, 1997, Order or the case would be dismissed sua sponte for lack of subject matter jurisdiction.

The response of the parties to this Court's Order of May 29, 1997, shows that the NMLP limited partners are apparently two other limited partnerships, Lakecrest I and Lakecrest II, both of which are organized under the Michigan Revised Uniform Limited Partnership Act, M.C.L. § 449.1101, et seq. Lakecrest I and Lakecrest II contain five limited partners who are residents of Michigan. (Pls.' Br. Opp'n at 5; Second Am. Compl. ¶ 4B3.)

In Carden, the District Court and the Court of Appeals held that a limited partnership's citizenship should be determined by reference to the citizenship of the general, but not the limited, partners. See 494 U.S. at 186–87, 110 S.Ct. at 1016–17. The Supreme Court reversed and held: (1) a limited partnership is, itself, not a "citizen" of the state under whose laws it was created; (2) in determining the citizenship of a limited partnership for diversity purposes the court must look at the citizenship of "all of the entity's members," including the limited partners. 494 U.S. at 189, 195, 110 S.Ct. at 1018, 1021. Plaintiffs seek to distinguish Carden by arguing that in Carden the limited partners were individuals while in the instant case the limited partners were other limited partnerships. This is a distinction without a difference. In Carden, the Supreme Court recognized that the states would continue to create "a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control." 494 U.S. at 197, 110 S.Ct. at 1022. Nonetheless, it was up to Congress to give these entities citizenship status for the purposes of diversity jurisdiction. Id. Thus, in following the rule and rationale of Carden, this Court reasons as follows:

(1) NMLP is not a citizen for diversity purposes; therefore this Court must look to the citizenship of NMLP's members.

(2) NMLP's members, Lakecrest I and Lakecrest II, are not citizens for diversity

purposes; therefore this Court must look to the citizenship of Lakecrest I and II's members.

(3) Lakecrest I and II contain members who are citizens of the same state, Michigan, of which Defendant is a citizen; therefore, there is not complete diversity of citizenship.

(4) Therefore, this Court lacks diversity jurisdiction.

Plaintiffs also argue that this Court can ignore "nondiverse" parties if the nondiverse parties are not the real parties to the controversy, citing *Certain Interested Underwriters.* Plaintiffs then proceed to argue that the citizenship of the limited partners of Lakecrest I and II may be ignored because these limited partners "are merely passive investors in a much larger voluntary business organization." (Pls.' Br. Opp'n at 5–6.) This argument is, of course, the very argument rejected in *Carden. See* 494 U.S. at 187 n. 1, 110 S.Ct. at 1017 n. 1. Plaintiffs' logic adopts the dissent in *Carden,* as it applies to limited partnerships. *See id.* at 198–99, 110 S.Ct. at 1022–23 (O'Connor, J., dissenting). Limited partners are always passive investors with no management role; that is the definition of limited partners. *See* R.U.L.P.A. § 303(a) (1976); M.C.L. § 449.1303(a). Even so, the Supreme Court majority[1] has held that the citizenship of all general and limited partners must be looked to in determining the citizenship of a limited partnership.

Plaintiffs' reliance upon *Certain Interested Underwriters* is ill-placed. That case did not involve limited partnerships as do *Carden* and the instant case. Rather, Lloyd's consists of unincorporated groups of investors, called syndicates, who appoint agents, called underwriters, to act on their behalf. *See Certain Interested Underwriters,* 26 F.3d at 41–42. The question in *Certain Interested Underwriters* was "whose citizenship counts: the agent-underwriters' or the syndicate members'?" *Id.* at 42. In a declaratory judgment action about whether there was insurance coverage, the Sixth Circuit held that the underwriters were the real parties in interest and that the federal court need not look at the citizenship of the syndicate members for diversity purposes. *Id.* at 43. In explaining its decision, the Sixth Circuit said that the underwriters "[were] liable on the contract" and "[t]he certificate of insurance and the policy itself states [sic] that the insurance is 'effected with certain Underwriters at Lloyd's, London.'" *Id.* The syndicate members were not listed or disclosed on any insurance documents, and Tennessee followed the "common law rule that an agent for an undisclosed principal is personally liable on a contract." *Id.* The plaintiffs did not have to sue the agents, but they elected to do so. *Id.* at 43–44. Thus, it was the underwriters who were affected by any judgment in *Certain Interested Underwriters.* The syndicates were not affected. In the instant case, in contrast to *Certain Interested Underwriters,* the limited partnership, itself, is the real party in interest because it is the plaintiff and the entity that stands to gain or lose in this case. This distinction was brought home by Justice Scalia in footnote 1 of *Carden:*

> The question presented today is not which of various parties before the Court should be considered for purposes of determining whether there is complete diversity of citizenship, a question that will generally be answered by application of the "real party to the controversy" test. There are *not,* as the dissent assumes, multiple respondents before the Court, but only one: the artificial entity called Arkoma Associates, a limited partnership. And what we must decide is the quite different question of how the citizenship of that single artificial entity is to be determined—which in turn raises the question whether it can (like a corporation) assert its own citizenship, or rather is deemed to possess the citizenship

**1.** Plaintiffs also seem to argue that this Court should ignore *Carden* because it was a 5–4 decision. (Pls.' Br. Opp'n at 4.) This Court is, of course, bound by majority decisions of the Supreme Court, not dissents. Anyway, the Sixth Circuit law even prior to *Carden* would require this Court to look to the citizenship of the limited partners in determining whether this Court had diversity jurisdiction. *See SHR Ltd. Partnership v. Braun,* 888 F.2d 455, 458–59 (6th Cir.1989) ("... the citizenship of a limited partnership is determined by considering the citizenship of all of its partners, both general and limited.")

of its members, and, if so, which members. The dissent fails to cite a single case in which the citizenship of an artificial entity, the issue before us today, has been decided by application of the "real party to the controversy" test that it describes.

494 U.S. at 187 n. 1, 110 S.Ct. at 1017 n. 1. Likewise, in the instant case, a plaintiff before this Court is an artificial entity, NMLP. The question presented to this Court is whether that party before this Court is a citizen for diversity purposes. It is not, for the reasons already set forth.

Therefore, this Court finds that it does not have subject matter jurisdiction. Therefore, this case will be dismissed.